Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

Attorneys for Plaintiff and Plaintiff Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LYNETTE BOURNE-MILLER, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC, and BMW Aktiengesellschaft,<br><br>Defendants. | **Civil Action No.:**<br><br>**CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiff Lynette Bourne-Miller ("Plaintiff"), bring this action against Defendants by BMW of North America, LLC ("BMW of NA") and BMW Aktiengesellschaft ("BMW AG") (collectively, "BMW"), by and through their attorneys, individually and behalf of all others similarly situated ("Class Members"), and allege as follows:

### INTRODUCTION

1.      Plaintiff Lynette Bourne-Miller ("Plaintiff") brings this action individually and on behalf all persons in the United States (excluding residents of the State of California or any individuals who purchased or leased a Mini in California) who purchased or leased any 2002 through 2006 Mini or 2005 through 2008 Mini Convertible vehicles equipped with a CVT

Transmission (collectively, "Class Vehicles") manufactured, distributed, and sold by BMW of North America, LLC ("BMW of NA") and BMW Aktiengesellschaft ("BMW AG") (collectively, "BMW" or "Defendants").

2.      Beginning in 2002, if not before, Defendants knew or should have known that the Class Vehicles and their continuously variable transmission ("CVT Transmission") contain one or more design and manufacturing defects that causes them to prematurely breakdown and suffer mechanical failure ("the CVT Transmission defect").

3.      A continuously variable transmission is a type of automatic transmission that allegedly provides more useable power, better fuel economy and a smoother driving experience than a traditional automatic transmission.  Unlike traditional transmissions with a gearset, a continuously variable transmission uses a system of pulleys with a metal belt or chain running between them which enables the engine to run at its most efficient revolutions per minute (RPM) for a range of vehicle speeds.

4.      When said premature breakdown and mechanical failure occurs, the effected Class Vehicles are no longer safe to operate and require repairs costing several thousand dollars.  Furthermore, due to the nature of the CVT Transmission defect, consumers have frequently experienced and will continue to experience unexpected and premature CVT Transmission failure while driving.  CVT Transmission failure while driving results in unsafe conditions, including but not limited to transmission slips, loss of forward propulsion, significant delays in acceleration, loud noises coming from the CVT Transmission, and total transmission failure while driving.

5.      These conditions present a safety hazard because of sudden and unexpected transmission failure that Class Vehicles can experience while in operation.  Thus, the Class

Vehicles and their CVT transmissions can fail, suddenly and unexpectedly, at any time and under any driving condition or speed, thereby contributing to traffic accidents, which can result in personal injury or death.

6.     Since 2002, if not before, BMW knew or should have known that the CVT Transmissions were defectively designed, assembled, and manufactured.  Rather than alerting Class Members of this safety hazard and offering to repair the Class Vehicles, BMW has concealed this problem from its customers at the time of purchase or lease and thereafter.

7.     Because BMW will not notify Class Members that the CVT Transmission is defective, Plaintiff and Class Members (as well as members of the general public) are subjected to dangerous driving conditions that often occur without warning.  As a result of the CVT Transmission defect, BMW through its dealers has also profited by selling replacement parts to Class Members.

8.     The CVT Transmission is an option on the Class Vehicles.  The Mini Cooper vehicles included in the definition of Class Vehicles all come equipped with CVT Transmissions.  Had Plaintiff and the other Class Members at the time of purchase or lease known about the defects contained in the Class Vehicles and their CVT Transmissions, the associated monetary repair costs and/or safety hazards, they would not have paid extra for this defective option, would not have purchased the said vehicles, or would have paid less for them.

9.     Plaintiff is informed and believes and based thereon alleges that as the number of consumer complaints about the CVT Transmission Defect increased, between 2004 to 2009, Defendant issued several technical service bulletins ("TSB") to only its dealers acknowledging the CVT Transmission defect for Class Vehicles and implemented several fixes that failed to repair the problem.

10.     Plaintiff is informed and believes and based thereon allege that despite notice of the defect from numerous consumer complaints and dealership repair orders, Defendants have not recalled the Class Vehicles to repair the defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse the Class Vehicles' owners and leaseholders the costs they incurred relating to diagnosing and repairing the CVT Transmission defect and the related damage that it causes.

11.     BMW knew and concealed the CVT Transmission defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiff and Class Members both at the time of sale and repair and thereafter.  Had Plaintiff and the Class Members known about this defect at the time of sale or lease, Plaintiff and the Class Members would not have purchased the Class Vehicles or would have paid less for them.  As a result of their reliance on Defendants' omissions and/or misrepresentation, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

12.     Additionally, as a result of the CVT Transmission defect contained in the Class Vehicles, Plaintiff and the Class Members have been harmed and have suffered actual damages in that the Class Vehicles and their CVT Transmissions have failed or are substantially certain to fail during their expected useful life.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff

and one defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendants BMW of NA and BMW AG have their North American headquarters in this jurisdiction, transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district.  Additionally, Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

15.     This Court has personal jurisdiction over Defendants BMW of NA and BMW AG.  Defendants' North American corporate headquarters is located in Woodcliff Lake, New Jersey.  As such, Defendants have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of New Jersey and throughout the United States.

## THE PARTIES

### Plaintiff

16.     Plaintiff Lynette Bourne-Miller is a South Carolina citizen who resides in Mt. Pleasant, South Carolina.  On or about October 10, 2003, Plaintiff purchased a 2004 Mini Cooper from Rick Hendrick BMW in Charleston, South Carolina.

17.     Plaintiff purchased her vehicle primarily for her personal, family, or household purposes.  The vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by defendants, and bears the Vehicle Identification No. WMWRC33464TJ53465.

18.     Only after Plaintiff purchased the vehicle did the CVT Transmission not function properly.  With around 21,000 miles on the vehicle's odometer, Plaintiff began to

experience CVT Transmission issues, namely the CVT transmission getting stuck in one position when driven at approximately 50-60 mph causing the RPM's to rise.

19.     On January 31, 2006, with approximately 21,957 miles on the odometer, Plaintiff took her vehicle to BMW dealer, Rick Hendrick BMW, complaining that the "motor seems to rev at 55mph" and that the "RPMs go way up."  The BMW dealer reprogrammed the vehicle's DME engine computer, cleared adaptation values in the CVT Transmission, performed a clutch adaptation, and set up the ratio adaption.

20.     Following the BMW dealer's repairs, Plaintiff did not experience problems with the CVT Transmission until on or around July 2008.

21.     On July 14, 2008, with approximately 38,459 miles on the odometer, Plaintiff took her vehicle to BMW dealer, Rick Hendrick BMW, complaining that "at 35 or 55 MPH the RPM's will rev." The BMW dealer reprogrammed the vehicle's DME engine computer again, and readapted the CVT Transmission.  The costs of the repair were covered under the vehicle's express warranty.

22.     Following the BMW dealer's repairs, Plaintiff did not experience problems with the CVT Transmission until on or around January 2011.

23.     On January 31, 2011, with approximately 53,119 miles on the odometer, Plaintiff took her vehicle to BMW dealer, Rick Hendrick BMW, again complaining that the CVT Transmission "doesn't upshift to the highest gear." The BMW dealer stated that they "found transmission slippage at 60 MPH range and trans will not shift further."  The costs of the repair were covered under the vehicle's express warranty.  The BMW dealer informed Plaintiff that the CVT Transmission needed to be replaced at a cost of $7,340.00.  Because BMW refused to pay the entire cost of repair, Plaintiff did not repair her transmission.

24.     At all times, Plaintiff, like all Class Members, has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Defendants**

25.     Defendant BMW of NA is a corporation organized and in existence under the laws of the State of Delaware and registered to do business in New Jersey.  BMW of NA's Corporate Headquarters is located in Woodcliff Lake, New Jersey.  BMW N.A. is the warrantor and distributor of the Class Vehicles in the United States.

26.      Defendant BMW AG, a foreign corporation organized and in existence under the laws of the Federal Republic of Germany with its principal place of business at Petuerling 130, 80809 Munich, Germany.  BMW AG designs and manufactures motor vehicles, parts, and other products for sale in United States and for export and sale throughout the world.

27.     At all times relevant herein,  Defendants  are engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in South Carolina and throughout the United States of America.

## TOLLING OF STATUTES OF LIMITATION

28.     Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein.  Plaintiff and Class Members could not have reasonably discovered the true, defective nature of the CVT Transmission Defect until shortly before this class action litigation was commenced.

29.     Defendants were and remain under a continuing duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the Class Vehicles, that the CVT Transmission Defect is based on defects in materials and/or manufacturing, and that it will

require costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles.  As a result of Defendants failure to disclose and/or active concealment, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

30.     For years, Defendants have designed, manufactured, distributed, sold, and leased the Class Vehicles.  Defendants have sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles equipped with the CVT Transmission in South Carolina and Nationwide.

31.     This lawsuit concerns certain Class Vehicles that are equipped with a factory-installed CVT Transmission.

32.     Conventional automatic transmissions have a finite number of gears, usually between three and six.  The appropriate gear is automatically selected by the vehicle based on several factors, including vehicle speed, engine revolutions per minute, incline/decline of the vehicle, and vehicle throttle.

33.     By contrast, a continuously variable transmission, *i.e.*, "CVT" [1] uses two pulleys and a drive belt that connects the pulleys to each other.  The pulleys automatically adjust themselves to different circumferences by increasing or decreasing the circumference of one pulley, and simultaneously decreasing or increasing, respectfully, the circumference of the other pulley.  The concept behind operation of the CVT transmission is that the transmission never disengages in order to change the transmission's gear ratio, and that the transmission is capable of adjusting to a very broad number of gear ratios in order to find a suitable ratio for

---

[1] Some potential benefits of CVT transmissions are that they provide more useable power, better fuel economy and a smoother driving experience than a traditional automatic transmission.

the particular driving circumstances.

34.     In 2002, BMW brought Class Vehicles with the CVT Transmissions installed to the market after decades of the Mini Coopers being out of production. Unfortunately, the CVT transmission was plagued with numerous defects.  These defects resulted in functional failure, including but not limited humming noises, premature failure, slippage etc.

35.     Dating back to 2002, BMW was aware of the defects of the CVT Transmission. BMW, however, failed and refused to disclose these known defects to consumers.  As a result of this failure, Plaintiff and Class Members have been damaged.

A.     **The CVT Transmission Defect Poses An Unreasonable Safety Hazard**

36.     The Class Vehicles have habitually suffered CVT Transmission failure while in traffic, creating a very serious safety hazard.  These failures often result in transmission slips, loss of forward propulsion, acceleration surging, significant delays in acceleration and total transmission failure.

37.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced problems with the CVT Transmission.  Complaints filed by consumers with the National Highway Traffic Safety Administration ("NHTSA") and posted on the Internet demonstrate that the defect is widespread and dangerous, expensive to repair, and that it manifests without warning.  The complaints also indicate Defendants' awareness of the problems with the CVT Transmission, the costs associated with the necessary repairs, and how potentially dangerous the defective condition is for consumers.  The following are some safety complaints relating to CVT Transmission failure (spelling and grammar mistakes remain as found in the original):

NHTSA Complaints:

- 2002 MINI COOPER. I WAS DRIVING FROM EAST LOS ANGELES TO

WEST LOS ANGELES (PLAYA DEL RAY) ON THE 105 WEST HGWY WHEN THE CARS TRANSMISSION WENT OUT. THIS HAPPENED IN THE MIDDLE OF THE FREEWAY IN LA DURING RUSH HOUR. I HAD TO SLOWLY MOVE OVER TO THE RIGHT HAND SIDE OF THE HIGHWAY UNTIL I COULD FIND AN AREA WITH A SHOULDER. I BARELY MADE IT TO THE SHOULDER AND COULD HAVE DIED FROM ONE OF THE CARS SPEEDING PAST ME. LUCKILY I MADE IT. I CALLED AAA AND THEY BROUGHT A TOW TRUCK WHICH TOWED THE CAR INTO A SHOP WHICH STATED THAT THEY WOULD NOT BE ABLE TO REBUILD THE TRANSMISSION. THEY SAID I WOULD HAVE TO REPLACE THE WHOLE THING WHICH WOULD COST $7,000 MINIMUM. I CALLED MULTIPLE OTHER DEALERS AND SHOPS, WHOM ALL GAVE THE SAME ESTIMATE. I DONATED IT TO MY LOCAL NPR STATION BECAUSE I DID NOT WANT TO PAY THAT AMOUNT OF MONEY TO REPLACE A FAULTY TRANSMISSION, WITH ANOTHER FAULTY TRANSMISSION.

- I ALWAYS MAINTAINED MY 2002 MINI COOPER AND AT 80K MILES THE TRANSMISSION BLEW UP JUST BEFORE I WAS TO ENTER A VERY BUSY FREEWAY IN LOS ANGELES, DOWNTOWN AREA. THERE WAS PLENTY OF OIL IN THE TRANSMISSION. I WAS TOLD IT WAS NOT A FAULT OF MY CARE AFTER THE MECHANIC LOOKED AT IT UPON TOW IN. IT JUST STOPPED FAST AND SHORT WITH A HUGE JERK FORWARD AND EXPLOSIVE NOISE. THE MECHANIC SAID IT BLEW IN BIG CHUNKS. I COULDN'T MOVE IT FROM TRAFFIC IN NEUTRAL AND HAD IT TOWED TO THE SHOP. 80K IS EARLY FOR SOMETHING LIKE THIS AND I SEE MANY PEOPLE ARE REPORTING THIS HAPPENED WITH EVEN LESS MILEAGE, 34K, 48K ...NO REPLACEMENTS AND SO MANY FAILURES LIKE THIS? MINI TURNS THEIR HEADS; WOULD NOT REPLACE OR EVEN TALK TO ME. PREVIOUSLY TOO THE POWER STEERING PUMP ALSO JUST STOPPED AND NO MOVEMENT ON THE WHEEL. SERIOUSLY DANGEROUS. I WAS TOLD BY THE DEALERSHIP ONE TIME IN MOUNTAIN VIEW, I HAD AN OIL LEAK. AT THE TIME THE AMOUNT THEY WANTED ME TO PAY WAS HIGH, 700.00 OR SO (JUST AFTER WARRANTY ENDED). I TOOK IT TO ANOTHER MECHANIC. HE TOOK ME UNDER THE CAR AND SHOWED ME THERE WAS NOT A SPOT OF OIL UNDER THAT CAR IN ANY NOOK OR CRANNY. IN THINKING ABOUT THIS AFTER TRANSMISSION PROBLEM I REALIZE THESE THINGS ARE TELLING ME MINI KNOWS ABOUT THEIR MINI MECHANICAL PROBLEMS. ALSO WHEN THE NEW ($4350.00) TRANSMISSION WAS PURCHASED, LA, MINI TOLD THE MECHANIC THEY HAD 5 TRANSMISSIONS IN STOCK IN THEIR PARTS DEPARTMENT AT ALL TIMES BECAUSE THIS WAS SO COMMON. THAT'S PROOF THEY KNOW IT'S A PROBLEM. YET NO RECALL TO PEOPLE WITH THESE ISSUES AND THESE CAN CAUSE SERIOUS LIFE THREATENING PROBLEMS. *TR

- TL*THE CONTACT OWNS A 2002 MINI COOPER. THE VEHICLE SHUT OFF WHILE DRIVING APPROXIMATELY 25 MPH. THERE WERE NO

WARNINGS PRIOR TO THE TRANSMISSION FAILURE. THE CONTACT FEELS THAT THIS IS A SERIOUS SAFETY ISSUE BECAUSE A CRASH COULD HAVE OCCURRED. THE FAILURE MILEAGE WAS 63,000.

- TRANSMISSION WHINING NOISE EVENTUALLY LEADING TO TRANSMISSION FAILURE. MINI IS AWARE OF THIS PROBLEM WITH CVT TRANSMISSIONS AND REFUSES TO ADMIT FAULT. VERY COMMON PROBLEM OCCURRING IN MOST 2002 VEHICLES WITH ONLY 40,000-60,000 MILES ON THEM. COST IS 7000 TO REPLACE. MINI DOES NOT OFFER REPAIR ON THIS PART. *TR

- MY 2003 MINI COOPER HAS HAD TOTAL TRANSMISSION FAILURE (CVT TRANSMISSION) AT ONLY 46,129 MILES. FAILURE WAS TOTAL AND SUDDEN AND VEHICLE IS UNDRIVEABLE WITHOUT NEW TRANSMISSION. THE DEALER QUOTED ME A COST OF $10,055.44 (PARTS $6,943.28, LABOR $2,700 + TAX). THIS COST IS MORE THAT THE VEHICLES' CURRENT VALUE. I HAVE BEEN TOLD THAT ONLY A NEW CVT TRANSMISSION CAN REPLACE THE FAULTY ONE, AND EVEN THEN THAT TRANSMISSION MAY AGAIN FAIL AS THEY ARE SUCH TERRIBLE TRANSMISSIONS. THE CAR WILL NOT TAKE ANY OTHER TRANSMISSION OPTION. THE DEALER BASICALLY LAUGHED AND SAID, "I DON'T SUPPOSE YOU HAVE AN EXTRA $10,000 LAYING AROUND," WHEN HE TOLD ME THE COST OF THE REPAIR. THE DEALER HAS OFFERED NO ASSISTANCE IN LOWERING THE COST, BUT BASICALLY SAID "TOUGH LUCK" AND TAKEN NO RESPONSIBILITY. THE CAR IS USELESS AND UNFIXABLE AT THIS COST. A RECALL SHOULD BE DONE AS CONSUMERS HAVE BEEN SOLD A FAILED TRANSMISSION, AND THE SAFETY OF THIS CAR'S TRANSMISSION IS TOTALLY FAULTY. *TR

- I OWN A 2003 MINI COOPER WITH A CVT AUTOMATIC TRANSMISSION, TRANSMISSION AND FRONT DIFFERENTIAL FILED AT 58000 MILES LUCKY FOR ME I WAS NOT ON THE INTERSTATE OR BUSY TRAFFIC AS A SERIOUS ACCIDENT COULD HAVE OCCURRED. MINI USA ARE TOTALLY AWARE OF THE PROBLEM AND STOPPED PUTTING THIS DEFECTIVE PART IN NEWER MODEL VEHICLES. THEY WILL ALSO NOT STAND BEHIND THEIR PRODUCT AND ARE UNWILLING TO RECTIFY IT. THERE ARE HUNDREDS OF PEOPLE WITH THIS SAME ISSUE CONCERNING THIS TRANSMISSION BUT FOR WHATEVER REASON THERE IS STILL NO SAFETY RECALL. I HOPE IT IS NOT GOING TO TAKE SOMEONE TO BE KILLED OR SERIOUSLY INJURED BEFORE ANYTHING IS DONE. ALSO THE BUSHINGS ON THE DRIVERS SIDE A FRAME ARE BAD WCH IN MY OPINION IS A SERIOUS FAULT AND COULD BE EXTREMELY DANGEROUS. COST OF REPLACEMENT IS 7,000+ THESE CARS ARE ROLLING DEATH TRAPS IN MY OPINION AND SOMEONE NEEDS TO BE HELD ACCOUNTABLE. *LN

- I HAVE A 2004 MINI COOPER WITH 87,000 MILES ON IT. THERE WERE NO EVENTS LEADING UP TO THE TOTAL CVT TRANSMISSION FAILURE THAT TOOK PLACE LAST FRIDAY 07/29/11. I WAS ENTERING INTO A LARGE INTERSECTION WHEN THE CAR STARTED BUCKING AND RATTLING. I JUST MADE IT INTO A HESS STATION PARKING LOT (THANK GOODNESS THERE WAS ONE THERE) WHEN IT WOULDN'T GO ANY FURTHER. I HAD IT TOWED TO A LOCAL TRANSMISSION SHOP AND THEY SAID THAT THE TRANS WAS DEAD AND I WAS GOING TO NEED A NEW ONE. THEY INFORMED ME THAT THERE AREN'T ANY REBUILT OPTIONS AND THE NEW TRANS IS GOING TO COST ME $5000 + $1200 FOR LABOR. I HAVE DONE A BUNCH OF RESEARCH ON THESE CVT TRANSMISSIONS AND APPARENTLY THEY HAVE BEEN A HUGE PROBLEM AND BMW/MINI HAVEN'T DONE ANYTHING ABOUT IT. I THINK IT IS A DISGRACE THAT THIS CONTINUES TO HAPPEN AND COST PEOPLE THOUSANDS OF DOLLARS. SOMETHING NEEDS TO BE DONE ASAP!!!!

- TL*THE CONTACT OWNS A 2004 MINI COPPER. THE CONTACT WAS DRIVING 55 MPH IN ORDER TO PASS ANOTHER VEHICLE WHEN THE TRANSMISSION FAILED AND MADE IT DIFFICULT TO INCREASE SPEED. THE CONTACT TOOK THE VEHICLE TO THE DEALER SEVERAL TIMES PRIOR TO THE TRANSMISSION FAILING AND WAS TOLD TO ONLY USE PREMIUM GASOLINE. THE CONTACT MADE THE CHANGE AND WITHIN A FEW MONTHS, THE TRANSMISSION FAILED. THE FAILURE AND CURRENT MILEAGES WERE 58,000.

- 2004 MINI COOPER. CVT TRANSMISSION REPLACEMENT RECOMMENDED. *TGW ONE DAY WHILE DRIVING ON THE HIGHWAY, THE VEHICLE JUST STOPPED; DEAD NO POWER. THE CONSUMER STATED THE VEHICLE IS SITTING IN THE GARAGE UN-DRIVABLE BECAUSE SHE DOESN'T HAVE THE $8,000 TO REPLACE THE CVT TRANSMISSION. *JB

- MY 2004 MINI COOPERS TRANSMISSION FAILED AT 80K MILES WITH NO WARNING. LUCKILY I WAS IN A PARKING LOT AND NOT ON THE HIGHWAY, WHERE I COULD HAVE BEEN KILLED. THE COST OF REPLACING THE TRANNY WAS $7,000. MINI USA WAS USELESS WHEN I PLEADED WITH THEM TO HELP ME. AFTER READING ABOUT ALL OF THE OTHER COMPLAINTS WITH THE CVT TRANS, I CAN'T BELIEVE THERE WAS NO RECALL. I WILL NEVER BUY A MINI AGAIN. I STILL OWE $11,000 ON THE CAR AND CANNOT AFFORD ANOTHER. *TR

- 2005 MINI COOPER AUTOMATIC CVT TRANSMISSION FAILED AT ONLY 47,000 MILES. WHEN TAKING MY FOOT OFF OF THE GAS, THE RPM'S WOULD REV UP AS THE CAR SLOWED DOWN. THEN MY CHECK ENGINE LIGHT AND EP (TRANSMISSION) WARNING LIGHT CAME ON AND THE CAR WOULD NO LONGER SHIFT ABOVE SECOND GEAR,

MAKING THE CAR PRACTICALLY UNDRIVABLE. THIS VEHICLE HAS ALWAYS BEEN SERVICED PROMPTLY AND WELL MAINTAINED THROUGH MINI COOPER DEALERSHIPS. MY FACTORY WARRANTY EXPIRED 6 MONTHS AGO. THE INTERIOR BELT OR CHAIN ON THE TRANSMISSION HAS "COMPLETELY COME APART" AND THE ENTIRE TRANSMISSION NEEDS TO BE REPLACED. MINI COOPER ESTIMATES $7600 TO REPLACE THIS TRANSMISSION! *TR

- TL*THE CONTACT OWNS A 2005 MINI COOPER. WHILE DRIVING 25 MPH, THE VEHICLE JERKED AND MADE RATTLING AND POPPING SOUNDS. THE VEHICLE SHUT OFF AND THE CONTACT PUSHED IT TO THE SIDE OF THE ROAD. THE KEY COULD NOT BE REMOVED FROM THE IGNITION AND THE VEHICLE HAD TO BE TOWED TO THE DEALER. SHE WAS INFORMED THAT THE TRANSMISSION FAILED AND WOULD COST $7,000 TO REPAIR. THE CONTACT WILL CALL THE MANUFACTURER FOR ASSISTANCE. THE FAILURE MILEAGE WAS 62,000.

- I HAD MY BRAND NEW 2005 MINI COOPER S AUTOMATIC FOR LESS THAN ONE MONTH WHEN IT STALLED IN THE MIDDLE OF THE STREET - THE ENGINE JUST STALLED OUT OR WENT INTO WHAT I'VE BEEN TOLD IS "LIMP MODE". LUCKILY, THE STREET WASN'T CROWDED AND I WAS ABLE TO COAST TO THE SIDE OF THE ROAD. BUT WHAT IF I WAS ON THE FREEWAY???? I'VE SUBSEQUENTLY FOUND OUT MANY PEOPLE HAVE HAD THE SAME PROBLEM AND BMW KNOWS ABOUT IT, BUT HASN'T BEEN ABLE TO FIX THE PROBLEM CORRECTLY. I BELIEVE THIS IS A HUGE SAFETY ISSUE! BMW SAID IT IS A SOFTWARE PROBLEM AND THEY HAVE MADE UPDATES, BUT I DON'T BELIEVE IT HAS BEEN CORRECTED. I AM STILL AFRAID TO DRIVE ON THE FREEWAY FOR FEAR OF BECOMING A STATISTIC! BMW SHOULD AT LEAST NOTIFY ALL MCS AUTOMATIC OWNERS OF THE POTENTIAL HAZARD! *JB

- HI, I'M WRITING TO REPORT THAT MY 2005 MINI COOPER, WITH LESS THAN 43K MILES IS IN NEED OF A THIRD TRANSMISSION. I NEARLY DID NOT MAKE IT HOME ONE EVENING BECAUSE THE JERKING MOTION THE CAR WAS MAKING AND BECAUSE THE ENGINE JUST FELT LIKE IT WAS GOING TO SHUT OFF. I NEARLY STALLED ON THE HIGHWAY, WHILE IN TRAFFIC. THE FIRST TRANSMISSION, WHILE UNDER WARRANTY WAS REPLACED IN NOVEMBER 2007 AT 28K MILES. ON 12/16/08, I HAD AN ACCIDENT WHERE THE TRANSMISSION PAN AMONG OTHER THINGS HAD TO BE REPLACED. IT WAS THE ONLY KNOWN DAMAGE CAUSED TO THE TRANSMISSION. THE AUTO BODY AND PAINT SHOP THAT I CONTRACTED WITH DID NOT KNOW HOW TO FILL THE TRANSMISSION FLUID AND THEREFORE THE CAR HAD TO BE TOWED THE LOCAL MINI COOPER DEALERSHIP. THEY PERFORMED THAT PIECE OF IT. NOW, THE DEALER IS TELLING ME I NEED A NEW

TRANSMISSION AND THE CAR IS OUT OF WARRANTY. THE DEALERSHIP ALSO STATES THEY DON'T KNOW IF THE TRANSMISSION DAMAGE WAS A RESIDUAL OF THE ACCIDENT OR NOT AND THEREFORE, WERE TRYING TO OPEN UP THE OLD INSURANCE CLAIM FROM JANUARY 2009. HOWEVER, MY INSURANCE COMPANY DOES NOT WANT TO PAY FOR THE NEW TRANSMISSION BECAUSE THEY STATE THE REPAIRS FROM THE ACCIDENT $7,888.70, PLUS THE COST OF A NEW TRANSMISSION, AROUND 8K WILL BE MORE THAN THE VALUE OF THE CAR. SO, WHO SHOULD PAY FOR THIS NEW TRANSMISSION, THE DEALER, THE AUTO BODY SHOP (WHOM DID NO WORK ON THE TRANSMISSION, SEEMINGLY) OR ME? HOW DO I KNOW, THIS IS NOT JUST ANOTHER BAD TRANSMISSION? THERE IS NO WAY TO TELL ON A MINI COOPER (NO WAY TO CHECK) TRANSMISSION FLUID AND NO INDICATOR LIGHT CAME ON. *TR

- TL*THE CONTACT OWNS A 2006 MINI COOPER. THE CONTACT STATED THAT WHILE PUTTING THE VEHICLE IN REVERSE OR DRIVE, IT WOULD SUDDENLY LUNGE BACKWARD OR FORWARD WITHOUT WARNING. THE FAILURE OCCURRED NUMEROUS TIMES SINCE 2009. THE VEHICLE WAS INSPECTED BY ORLANDO MINI IN WHO ADVISED HER THAT SHE NEEDED TO REPLACE THE TRANSMISSION. THE VEHICLE HAD NOT BEEN REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 13,000. UPDATED 03/24/11*LJ THE CONSUMER STATED THE FAULTY TRANSMISSION CAUSED THE VEHICLE TO LUNGE FORWARD AND BACKWARD. UPDATED 04/04/11

- I HAD HAD MY CAR FOR A WEEK AFTER GETTING IT BACK AFTER A VERY EXPENSIVE TRANSMISSION REPLACEMENT WHEN I WAS DRIVING IT AND TRIED TO TURN ONTO THE HIGHWAY. IT WAS EXTREMELY DIFFICULT TO MAKE THE TURN AND I NARROWLY AVOIDED ENDING UP IN THE BAR DITCH. UPON, GETTING MY VEHICLE TO TOWN I IMMEDIATELY TOOK IT TO A MECHANIC. MY POWER STEERING HAS FAILED AND I WILL PROBABLY BE REPLACING THE WHOLE SYSTEM AT A THOUSAND DOLLARS OR MORE. AFTER PAYING 6500+ FOR A TRANSMISSION THAT WENT OUT THROUGH NO FAULT OF MY OWN, YOU CAN IMAGINE MY DISAPPOINTMENT AND FRANKLY, MY DISGUST. I CALLED THE CLOSES MINI COOPER DEALERSHIP (ABOUT 400 MILES AWAY) THEY OFFERED NO HELPFUL INFORMATION AND NEGLECTED ANY MENTION OF THE NUMEROUS PROBLEMS WITH THIS COMPONENT, THE CURRENT INVESTIGATION, AND THE CLASS ACTION LAWSUIT THAT WAS FILED LAST FALL. I FOUND ALL THAT OUT THROUGH MY OWN RESEARCH ON THE INTERNET. OBVIOUSLY, I HAVE NOT REPAIRED THIS YET BECAUSE I DON'T KNOW HOW I CAN.

- I BOUGHT MY MINI COOPER TWO MONTHS AGO. IT IS A 2006 MODEL. I WAS DRIVING HOME ON THE NIGHT OF THURSDAY JANUARY 7TH WHEN I HEARD A LOUD CLUNK. I LIVE ON A CALICHE ROAD SO

NATURALLY, I THOUGHT I HAD KICKED UP A ROCK OR CLUNK OF DIRT AND IT HIT THE BODY OF MY CAR. THE NEXT MORNING I HEADED OUT TO GO TO CLASS AND LESS THAN 5 MILES (I LIVE OUTSIDE OF TOWN 30 MILES, SO YES I DO A LOT OF DRIVING, BUT MY 2004 HYUNDAI SONATA HANDLED IT FOR OVER 2 YEARS AND WHEN I FIRST ACQUIRED IT HAD 145,000 MILES AND WHEN I FINISHED 198,000 AND WAS STILL RUNNING FINE) DOWN THE ROAD I BRAKED TO TURN ONTO A DIFFERENT ROAD AND AFTER COMPLETING THE TURN I PRESSED THE GAS PEDAL, THE ENGINE ROARED THE TACHOMETER SPRUNG UP, BUT THE CAR DIDN'T MOVE. THE MECHANIC I TOOK IT TO CONFIRMED THAT MY TRANSMISSION IS SHOT, NO DOUBT ABOUT, HOWEVER HE CANNOT TELL ME EXACTLY WHAT IS WRONG WITH IT WITHOUT TAKING OUT MY TRANSMISSION AND LOOKING AT THE INSIDE AS THAT IS WHERE THE SOURCE OF THE FAILURE ORIGINATES. IT IS AN INTERNAL DEFECT THAT CONSUMERS HAVE NO CONTROL OVER. *TR

Internet Postings:

- Add me to the list of disgusted Mini owners. Mine's a 2007 convertible with CVT transmission, 71k miles. The car started making a whining noise Monday and today I was told by an independent mechanic that it needs a new $5300 tranny. Tonight I had decided to take it to the Mini dealer and pitch a fit to get them to cover the repair. However it sounds like from all the previous posts, that will not help. I guess I will have it repaired and trade it. I have loved the car, but this has "taken the shine" off of it. FYI – 2007 and 2008 convertibles are 1st generation Minis, 2009 to now are 2nd generation.

- Hi, I have a 2007 Mini Cooper S convertible with automatic transmission, several days ago the transmission began to fail, make very abrupt changes between 2nd and 3rd, so leading to the MINI shop and they told me it was the "Transmission Control unit" or I had to change the complete transmission, someone has changed the oil? MINI in the workshop because I was told that was for life, someone has fixed this problem?

- I have a 2008 Mini Conv. with the CVT transmission that just failed with 36,400 miles on it. I did not use the dealer for the scheduled service plan and because of this they are not honoring the warrantee..For all the BS emails Mini sends to customers you would think they would send service reminders if they know their transmissions suck and will fail without a tranny fluid change at 18,000 miles. Obviously this is a company with no integrity at all!

- I have a 2008 S with 23,000 mi. on it. 2 months ago I had a transmission problem and am now wondering if it is leading to the failure. On starting, I put the gear in reverse and heard a loud clunk. Then the clunk happened when I put it in 1st each time. The car wouldn't go faster than 25mph with the engine racing like it's going to blow up. I think the car wouldn't shift out of 1st and the engine just raced. The

engine and transmission lights went on. The dealer just reset the warning lights and gave me the car back. One month later it did it again although after about 10 minutes it came out of it and started to shift again. Today my engine light came on and wouldn't go off so my car is in the dealership.

- I have a 2003 MINI w/ a CVT that went out at 78,000, out of warranty. I contacted MINI directly and the rep said he had not heard of anyone with this problem! I informed him that many people have experienced the same problem and he basically said there is nothing they could/would do about it since it was out of warranty. Not only does a new tranny cost $5300 from the factory, they don't even make the parts to rebuild it!!! Although you can buy a rebuilt from the factory… how is this possible or fair??? It took my mechanic 12hrs to remove it (factor in those labor costs plus labor to reinstall!) and attempted to find exactly what parts were needed, which is when he discovered that they don't even sell the parts needed to fix it! How RIDICULOUS is that?! ...This car has put me in financial ruin! It was my only transportation option so I was forced to take cabs to work, costing me around $1500/mo. After months of being late on all my bills and nearly avoiding an eviction, I was able to save up for a cheap car to get me around until I could save up enough to get it fixed, still saving up. I don't understand why BMW/MINI is not even acknowledging this and is doing absolutely nothing to remedy a problem of this magnitude since is affecting so many people. And they are supposed to be a luxury car company? Why haven't they recalled this transmission yet?

- My 2004 Cooper transmission died on me 2 years ago, with absolutely no warning! I had 80k miles on it.  I was heartbroken when i found out that it would cost me almost $7,000 to replace. I had to take a $5,000 loan from a family member to get a new one installed. When I spoke to the powers that be at Mini USA, they said they would contact my dealer and look into it. I was given no resolution… only that I could defer a few payments due to my expense, but still had to come up with a monthy car payment anyway. I am outraged and in the process of getting a lawyer. I love BMW and loved my Mini, but I will never buy another Mini again. I do feel like the CVT should have been recalled and I will stop at nothing to get reimbursed for my expenses. I still owe a fortune on this car. If anyone else has an 04 mini with this problem, I'd love to hear your story. I understand the CVTs are no longer being used. It would be nice if BMW would just own up to their mistakes.

- 2003 mini shut down on me going up a hill !!!! what a problem that coud have been. I bought my mini new and have had the engine light on forever even after i leave the dealership it flashes back on….but, the popping noise and just not moving blew me doors off!!!!! today i did some research and to my disappointment have seen that not only did my trans blow but everyone else will face this problem real soon…..mini usa your company needs to be the bigger guy and help out your customers and stop feeding bmw's fat pocket book!!!!!!!!!!!

38.     The CVT Transmission defect poses an unreasonable safety risk for Class

Members, as well as the drivers, passengers, and pedestrians sharing the road with Class

Vehicles.  A vehicle's ability to have forward propulsion, not to stall, not to surge, and the ability of a vehicle's transmission to perform properly are each critical to the safe operation of a motor vehicle.  A defect that causes one or more of these negative characteristics clearly poses a safety hazard to the general public, and increases the risk of automobile accidents.

**B.**     **Defendants Have Exclusive Knowledge Of The CVT Transmission Defect**

39.     Defendants have superior and exclusive knowledge of the CVT Transmission defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members prior to their purchase or lease of the Class Vehicles.

40.     Only Defendants had access to information about the defects of the CVT Transmissions of the Class Vehicles through their dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other internal sources of aggregate information about the problem.

41.     Starting in November 2004, Defendants issued the first of several technical service bulletins ("TSB") to only their dealers acknowledging the CVT Transmission defect for Class Vehicles.   In these TSBs, Defendants implemented a variety of cheaper, albeit temporary, fixes instead of replacing the defective CVT Transmissions.

42.     The existence of the CVT Transmission defects is a fact that would be considered material by a reasonable consumer deciding whether to purchase or lease a vehicle that was equipped with a CVT transmission.  Had Plaintiff and other Class Members known that the Class Vehicles were equipped with defective CVT Transmissions, they would not have purchased the Class Vehicles equipped with the CVT transmissions or would have paid less for them.

43.     Reasonable consumers, like Plaintiff, expect and assume that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects.  Plaintiff and Class Members further expect and assume that Defendants will not sell or lease vehicles with known safety defects, such as the CVT Transmission Defect, and will disclose any such defects to its consumers when it learns of them.  They do not expect Defendants to fail to disclose the CVT Transmission Defect to them, to continually deny the defect, and to charge them thousands of dollars to repair defective CVT Transmissions.

**C.      BMW Has Actively Concealed The CVT Transmission Defect**

44.     While defendants been fully aware of the CVT Transmission Defect in the Class Vehicles, they have actively concealed the existence and nature of the defect from Plaintiff and Class Members at the time of purchase, lease or repair and thereafter.  Specifically, defendants have failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

a.      any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the CVT Transmissions;

b.      that the Class Vehicles, including their CVT Transmissions, were not in good in working order, were defective, and were not fit for their intended purposes; and

c.      that the Class Vehicles and their CVT Transmissions were defective, despite the fact that they learned of such defects through consumer complaints, as well as through other internal sources, as early as 2002, if not before.

45.     Defendants have caused Plaintiff and Members of the Class to expend money at its dealerships to repair or replace the Class Vehicles' CVT Transmission, despite Defendant's knowledge of the defect.

46.     When consumers present the Class Vehicles to an authorized BMW dealer for repair of the CVT Transmission, consumers are typically told that they must pay for the repair. The cost of repairing the CVT Transmission ranges from approximately six to ten thousand dollars, which is about one-third to one-half of the purchase price of the Class Vehicles.

47.     To this day, defendants still have not notified Plaintiff and the Class Members that the Class Vehicles suffer from a systemic defect that causes the CVT Transmission to malfunction.

48.     Defendants have caused Plaintiff and Class Members to expend money at its dealerships to diagnose, repair or replace the Class Vehicles' CVT Transmissions, despite BMW's knowledge of the CVT Transmission defect.

D.     **New Jersey Law Should Apply**

49.     To the extent that it is appropriate to engage in a choice of law analysis for purposes of deciding any motion to dismiss that may be filed by Defendants, New Jersey's substantive laws should apply to the proposed nationwide Class, as defined herein, because Plaintiff properly brings this Complaint in this District.

50.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class Members under the Due Process Clause, 14th Amendment, § 1, and the Full Faith and Credit Clause, Art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class Members, thereby creating state interests that ensure that the choice of New Jersey state law is

not arbitrary or unfair.

51.     Specifically, Defendants' North American headquarters and principal place of business is located in New Jersey.  Defendant BMW of NA is registered to do business in New Jersey.

52.     Defendants also own property and conduct substantial business in New Jersey and, therefore, New Jersey has an interest in regulating Defendants' conduct under its laws. Defendants' decision to reside in New Jersey and avail itself of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

53.     A substantial number of Class Members also reside in New Jersey and purchased their vehicles in New Jersey.

54.     Upon information and belief, New Jersey is also the State from which Defendants' misconduct emanated.  This conduct similarly injured and affected all Plaintiff and Class Members residing in the United States.  For instance, Defendants' marketing and advertising efforts, warranty and goodwill policies and procedures, and maintenance schedules and recommendations were all likely created in and orchestrated from Defendants' headquarters in New Jersey.  As a result, New Jersey is where the conduct causing injury to the Plaintiff and Class Members occurred and from where it emanated.

55.     The application of New Jersey's laws to the Nationwide Class is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiff and the proposed Nationwide Class, and New Jersey has a greater interest in applying its laws here than any other interested state.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action individually, and on behalf of a nationwide class

(excluding residents of the State of California or any individuals who purchased or leased a Class Vehicle in California), pursuant to Fed. R. Civ. Pr. P. 23(a), 23(b)(2), and/or 23(b)(3); specifically, the following Class and Sub-Class:

<u>Nationwide Class</u>:   All persons or entities in the United States, except California, who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").

<u>South Carolina Sub-Class</u>:   All persons or entities in South Carolina who are current or former owners and/or lessees of a Class Vehicle (the "South Carolina Sub-Class").

57.   Excluded from the Nationwide Class and the South Carolina Sub-Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case.  Plaintiff reserves the right to modify the Nationwide Class and South Carolina Sub-Class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

58.   <u>Numerosity</u>:  Upon information and belief, each of the classes is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual Class Members are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes that tens of thousands of Class Vehicles have been sold and leased in the United States of America, and thousands of Class Vehicles have been sold or leased in South Carolina.

59.   <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions or law and fact exist as to all Class Members.  These questions predominate over the questions affecting individual Class Members.  These common legal and factual questions include, but are not limited to:

a.   Whether Class Vehicles suffer from defects relating to the CVT

Transmission;

b. Whether the defects relating to the CVT Transmission constitutes an unreasonable safety risk;

c. Whether Defendants know about the defects relating to the CVT Transmission and, if so, how long Defendants have known of the defect;

d. Whether the defective nature of the CVT Transmission constitutes a material fact;

e. Whether Defendants have a duty to disclose the defective nature of the CVT Transmission to Plaintiff and Class Members;

f. Whether Plaintiff and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

g. Whether Defendants knew or reasonably should have known of the defects relating to the CVT Transmission before it sold and leased Class Vehicles to Class Members;

h. Whether Defendants should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective CVT Transmissions;

i. Whether Defendant breached the express warranty for the Class Vehicles;

j. Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or

replace their defective CVT Transmissions; and

60.     <u>Typicality</u>:  The claims of representative the Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, purchased and leased a Class Vehicle designed, manufactured, and distributed by Defendants, and equipped with a CVT Transmission.  The representative Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that he has incurred or will incur the cost of repairing or replacing the defective CVT Transmission.  Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread resulting in injury to all Class Members.

61.     <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

62.     <u>Superiority</u>:  Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal

litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## VIOLATIONS ALLEGED

### COUNT I
### VIOLATION OF THE NJCFA
### (On Behalf of the Nationwide Class)

63.     Plaintiff and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

64.     The NJCFA protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J.S.A. 56:8-2.

65.     Plaintiff and Class Members are consumers who purchased and/or leased Class Vehicles for personal, family, or household use.

66.     Defendants engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the NJCFA.  Specifically, Defendants were aware that the Class Vehicles suffered from a common defect resulting in transmission slips, loss of forward propulsion, significant delays in acceleration, loud noises coming from the CVT Transmission, and total transmission failure while driving the Class Vehicles, but purposefully failed to disclose this to Plaintiff and Class Members during the purchase of the vehicle or thereafter.  Defendants failed to disclose the CVT Transmission Defect with the knowledge that many Class Members may not discover the CVT Transmission Defect until after the expiration of their warranties. Further, Defendants marketed these luxury vehicles as being of superior quality when the Class Vehicles contained a known defect.  Finally, Defendants marketed and advertised the CVT

transmissions in the Class Vehicles as being superior to traditional transmissions in fuel economy and other respects.

67.     Defendants also engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions.  Defendants purposefully and knowingly failed to disclose the defect in the Class Vehicles in order to secure the sale of these vehicles at a premium price and also to mislead owners during the limited warranty period to avoid having to perform their contractual duties under the warranty.

68.     Defendants did not fully and truthfully disclose to its customers the true nature of the inherent defect in the CVT Transmission, which was not readily discoverable until years later, sometimes after the warranty has expired.

69.     Defendants intended that Plaintiff and all Class Members rely on the acts of concealment and omissions, so that they would purchase the Class Vehicles and not have the defects remedied under warranty.

70.     As a result of Defendants' conduct, Plaintiff and Class Members have suffered an ascertainable loss.  In addition to direct monetary losses which can be several thousands of dollars, Plaintiff and Class Members have also suffered an ascertainable loss by receiving less than what was promised.

71.     A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class Members.  Had the defects in the CVT Transmission in the Class Vehicles been disclosed, consumers would not have purchased them, would have paid less for the Class Vehicles had they decided to purchase them, would have performed the necessary maintenance on the CVT Transmission, or would have presented their vehicles for repair of the CVT Transmission Defect under warranty.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the Nationwide Class or,
### Alternatively, the South Carolina Sub-Classes)

72.     Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

73.     Plaintiff bring this cause of actions against BMW of NA only.

74.     BMW of NA expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly.  BMW of NA also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge if they manifested during the New Vehicle Limited Warranty ("NVL Warranty") period.

75.     BMW of NA breached this warranty by selling to Plaintiff and Class Members the Class Vehicles with known defects, including but not limited to the defective CVT Transmission.

76.     BMW of NA further breached this warranty by failing to repair and/or replace Plaintiff's and other putative Class Members' CVT Transmissions.

77.     Specifically, Plaintiff presented her vehicle to an authorized service center while still covered under the express warranty on two separate occasions complaining of transmission problems.  Despite that, Defendants refused to honor the warranty and repair the damage caused by the CVT Transmission Defect free of charge.  Instead, BMW of NA implemented temporary fixes designed to mask the CVT transmission defect until after Plaintiff's 4 years/50,000 miles express Warranty had expired, thereby shifting the burden of repair to the plaintiff.

78.     BMW of NA knew of the aforesaid defects by 2002, if not before, and continues

to have knowledge of the CVT Transmission Defect and breaches of its express warranty, yet has intentionally failed to notify Plaintiff and Class Members.

79.     This intended failure to disclose the known CVT Transmission Defect is malicious, and was carried out with willful and wanton disregard for the rights and economic interests of Plaintiff and Class Members.

80.     As a result of BMW of NA's actions, Plaintiff and Class Members have suffered economic damages including but not limited to costly repairs, loss of use of the vehicles, substantial loss in value and resale value of the vehicles, and other damage.

81.     BMW of NA's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.  Specifically, BMW of NA's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect and purposefully concealed the defect until such time that the Class Vehicles were out of warranty.  Further, even when the defect manifested during the warranty period, as was the case with Plaintiff, BMW of NA refused to properly repair the vehicle under warranty.

82.     The time limits contained in BMW of NA's warranty period were also unconscionable and inadequate to protect Plaintiff and Class Members.  Among other things, Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored BMW of NA.  A gross disparity in bargaining power existed between BMW of NA and Class Members, and BMW of NA knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

83.     Plaintiff and Class Members have complied with all obligations under the

warranty, or otherwise have been excused from performance of said obligations as a result of BMW of NA's conduct described herein.

**COUNT III**
**BREACH OF THE IMPLIED**
**WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the South Carolina Sub-Class)**

84.     Plaintiff and the Classes incorporate by reference each proceeding and succeeding paragraph as though fully set forth at length herein.

85.     Defendants are "merchants" as defined under the Uniform Commercial Code ("UCC").

86.     The Class Vehicles are "goods" as defined under the UCC.

87.     Defendants impliedly warranted that the Class Vehicles were of a merchantable quality.

88.     Defendants breached the implied warranty of merchantability, as the Class Vehicles were not of a merchantable quality at the time of sale and thereafter due to the CVT Transmission Defect, and the associated problems caused by this defect.  Specifically, the CVT Transmission Defect can cause transmission slips, loss of forward propulsion, significant delays in acceleration, loud noises coming from the CVT Transmission, and total transmission failure while driving.

89.     As a direct and proximate result of the breach of said warranties, Plaintiff and Class Members were injured, and are entitled to damages.

90.     Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect and actively concealed the defect from Class Members

in order to allow the applicable warranty period to run.

91.    The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiff and Class Members.  Among other things, Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and Class Members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the CVT Transmission would fail well before their useful lives.

92.    Plaintiff and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

**COUNT IV**
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the South Carolina Sub-Class)**

93.    Plaintiff and the Classes incorporate by reference each proceeding and succeeding paragraph as though fully set forth at length herein.

94.    Defendants made material misrepresentations and omissions concerning a presently existing or past fact.  For example, Defendants did not fully and truthfully disclose to its customers the true nature of the inherent defect with the CVT Transmission in the Class Vehicles, which was not readily discoverable until years later, sometimes after the warranty has expired.  As a result, Plaintiff and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said defects and all of the resultant problems, and also not present their vehicles to an authorized repair facility during the warranty period to have the defect remedied at no cost.

95.     These omissions and statements were made by Defendants with knowledge of their falsity, and with the intent that Plaintiff and Class Members rely on them.

96.     Plaintiff and Class Members reasonably relied on these statements and omissions, and suffered damages as a result.

**COUNT V**
**BREACH OF THE DUTY OF GOOD FAITH**
**AND FAIR DEALING**
**(On Behalf of the Nationwide Class)**

97.     Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

98.     Every contract in New Jersey contains an implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

99.     Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiff and Class Members of the CVT Transmission Defect in the Class Vehicles, and failing to fully and properly repair this defect.

100.     Defendants acted in bad faith and/or with a malicious motive to deny Plaintiff and Class Members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

**COUNT VI**
**UNJUST ENRICHMENT**
**(On behalf of the Nationwide Class)**

101.     Plaintiff and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

102.     As a direct and proximate result of Defendants' failure to disclose known defects and material misrepresentations regarding known defects and the scope of the Warranty

coverage in the Class Vehicles, Defendants have profited through the sale and lease of said vehicles. Although these vehicles are purchased through Defendants' agents, the money from the vehicle sales flows directly back to Defendants.

103.    Additionally, as a direct and proximate result of defendants' failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, Plaintiff and members of the Class Members have incurred substantial costs to repair the defects and therefore have conferred an unjust substantial benefit upon Defendants.

104.    Moreover, as a direct and proximate result of Defendants' failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, Defendants have profited to the extent that Plaintiff and Class Members purchased and leased Defendants' vehicles, purchased certified BMW parts directly from the Defendants to repair the defects, and had to pay for repairs out of their own pocket that should have been covered under warranty.

105.    Defendants have therefore been unjustly enriched due to the known defects in the Class Vehicles through the use of funds that earned interest or otherwise added to defendants' profits when said money should have remained with Plaintiff and Class Members.

106.    As a result of the Defendants' unjust enrichment, Plaintiff and Class Members have suffered damages.

**COUNT X**
**INJUNCTIVE RELIEF**

179.    Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

180.    Injunctive relief is appropriate and necessary to remedy Defendants' wrongful conduct and to prevent the wrongful conduct from continuing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully requests that this Court:

    a.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

    b.    Appoint Plaintiff as the representative of the Class and their counsel as Class counsel;

    c.    Award all actual, general, special, incidental, statutory, treble, punitive, and consequential damages to which Plaintiff and Class Members are entitled;

    d.    Award pre-judgment and post-judgment interest on such monetary relief;

    e.    Award injunctive relief is appropriate and necessary to remedy Defendants' wrongful conduct and to prevent the wrongful conduct from continuing; and

    f.    Award all other relief deemed appropriate by the Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated:  November 23, 2011

By:  _____
Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898
Facsimile: (973) 228-0303
e-mail: mmendelsohn@mskf.net
e-mail: dmazie@mskf.net

### LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby further certify that to the best of my knowledge, the matter in controversy is the subject of another action pending in United States District Court, Central District of California, entitled Aarons v. BMW of North America, LLC Case No. CV-11-07667 PSG (CWX).  However, the Aarons matter has been brought on behalf of a California-only class, while this case involves a nationwide class and excludes those Class Members who reside in California.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiff

_____
MATTHEW R. MENDELSOHN

Dated:  November 23, 2011